UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRENDA LEE ALLISON,
formerly known as
BRENDA LEE EVANS,

      Plaintiff,

v.                                                    Case No. 1:18-cv-794
                                                    Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant,
_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied her claim for supplement security income (SSI).

Plaintiff alleged a disability onset date of January 1, 2012. PageID.218. She identified her disabling conditions as depression, anxiety, fibromyalgia, and a knee replacement. PageID.222. Plaintiff applied for SSI on October 15, 2015. PageID.38. Prior to applying for SSI, plaintiff completed the 12th grade and "did not work at all" in the 15 years prior to filing her claim. PageID.233. The administrative law judge (ALJ) clarified that "although the claimant has worked in the past 15 years, none of the jobs was performed at substantial gainful activity levels." PageID.53. The ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on January 31, 2018. PageID.38-55. This decision, which was later approved by the

1

Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since her application date of October 15, 2015. PageID.40. At the second step, the ALJ found that plaintiff had severe impairments of: degenerative disk disease of the lumbar spine; fibromyalgia; degenerative joint disease of the bilateral hips; osteoarthritis of the bilateral knees, status-post arthroplasty; diarrhea; insomnia; obesity, major depression; generalized anxiety disorder; and, post-traumatic stress disorder (PTSD). PageID.40-41. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.41.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can never climb ladders, ropes or scaffolds, kneel or crawl. She can occasionally climb stairs and ramps. She can frequently balance, stoop and crouch. She can never work around hazards such as unprotected heights or unguarded, uncovered moving machinery. She can understand, remember and carry out simple instructions. She can tolerate occasional changes in a routine work setting. She can never deal with the general public. She can occasionally deal with supervisors and co-workers. She will be 10% off task throughout the workday.

PageID.44-45. The ALJ also found that plaintiff had no past relevant work. PageID.53.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.53-54. Specifically, the ALJ found that plaintiff could perform the requirements of light unskilled exertional level work as follows: general office clerk (80,000 jobs); assembly positions at a bench

4

or table (95,000 jobs); and packaging at a bench or table (61,000 jobs). PageID.54. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, since October 15, 2015 (the date the application was filed) through January 31, 2018 (the date of the decision). PageID.55.

### III. DISCUSSION

Plaintiff set forth four issues on appeal:

### A. The ALJ failed to give proper weight to the opinion and diagnoses of plaintiff's long-term primary care provider.

Plaintiff's claim involves an opinion by her physician's assistant, Mr. Sam Dyste, in 2014.[1] As a physician's assistant, Mr. Dyste is not entitled to the deference accorded to a treating physician. The regulations establish two categories of medical evidence, *i.e.*, "acceptable medical sources" (such as licensed physicians and psychologists) and "other sources". *See Noto v. Commissioner of Social Security*, 632 Fed. Appx. 243, 248 (6th Cir. 2015). "The regulations establish the weight or deference that must be given to the opinion of an acceptable medical source depending on whether it is a 'treating source,' a 'on-treating (but examining) source,' or a 'non-examining source.'" *Id.* quoting *Smith v. Commissioner of Social Security*, 482 F.3d 873, 875 (6th Cir. 2007). "Other sources" include everyone else, such as nurse practitioners, physician's assistants, and therapists, which are referred to as "non-acceptable medical sources." *Noto*, 632 Fed. Appx. at 248. "The opinion of a 'non-acceptable medical source' is not entitled to any particular weight or deference—the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record." *Id.* at 248-49.

> Social Security Ruling 06–03p elaborates further as to how the ALJ should treat evidence from a non-acceptable medical source. SSR 06–03p, 2006 WL 2329939 (Aug. 9, 2006). This ruling recognizes that in some cases a non-acceptable

---

[1] While plaintiff makes a brief reference to "opinions expressed by David Best, D.O., in 2012", she does not develop the claim or opinions in any detail. Plaintiff's Brief (ECF No. 13, PageID.1331).

5

medical source may have an insight as to the claimant's impairment that outweighs even a treating source's opinion depending on the nature of her treatment relationship with the claimant and the quality and supportability of her opinion. 2006 WL 2329939, at *5. Thus, "[o]pinions from these medical sources . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* at *3. Moreover, "the case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity." *Id.* at *6. Finally, "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that discussion of the evidence in the determination or decision allows a claimant and subsequent reviewer to follow the adjudicator's reasoning[.]" *Id.*

*Noto*, 632 Fed. Appx. at 249.

While the ALJ is required to give "good reasons" for the weight assigned a treating source's opinion, *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004), this articulation requirement does not apply when an ALJ evaluates the report of a medical source who is not a treating, acceptable medical source. *See Smith*, 482 F.3d at 876. While the ALJ has discretion to assign it any weight to the opinion of a non-acceptable medical source that she "feels appropriate based on the evidence of record," *Noto*, 632 Fed. Appx. at 248-49, "the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning," *Stacey v. Commissioner of Social Security*, 451 Fed. Appx. 517, 519 (6th Cir. 2011) (internal quotation marks omitted).

The ALJ addressed Mr. Dyste's opinions as follows:

Treatment notes of Sam Dyste from June 2013 reference DHS [Department of Human Services] paperwork and a disabled parking permit (9F/89, 91; 10F/38). In June 2014, Mr. Dyste completed a temporary certification for disability parking placard application on the claimant's behalf, stating an inability to walk more than 200 feet due to knee osteoarthritis (10F/39). In considering these opinions, it is noted that statements that the claimant's is or is not disabled are not medical opinions but are administrative findings dispositive of a case. Such issues are reserved to the Commissioner, pursuant to 20 CFR § 404.1520b(c)(3) 416.920b(c)(3). Additionally, these opinions were rendered for the limited purpose of a parking permit/DHS and are vague and not set forth in clear functional terms.

6

> Further, they were rendered prior to the claimant's knee replacement surgery, and are inconsistent with the physical examination findings and the claimant's activities discussed in detail above. Accordingly, I give them little weight.
>
> In June 2013, the claimant's primary care provider, Sam Dyste, PAC completed a medical examination report for the Antrim County DHS in which he diagnosed the claimant with allergic rhinitis, hypertension, knee osteoarthritis, depression, fibromyalgia, and hyperlipidemia and opined that the claimant's condition was deteriorating and could occasionally lift 10 pounds or less, but nothing over and could stand and or walk less than 2 hours in an 8 hour workday and sit less than 6 hours in an 8 hour workday, but had no mental limitations and could meet her needs in the home (10F/40-42). In September 2017, Mr. Dyste completed a physical capacities assessment in which she [sic] opined that due to depression and osteoarthritis, the claimant could occasionally, sit, stand, walk, and perform sedentary work (14F/2). Further, that the claimant could occasionally reach push and pull and frequently grasp bilaterally, but could never bend/stoop, squat, crawl, kneel or climb and that she should avoid machinery with moving parts and unprotected parts (14F/2-3). In considering his opinion, it is noted the Mr. Dyste has a longitudinal treatment relationship with the claimant since September 2012 (14F/2). However, this opinion suggests a greater level of physical impairment than indicated by Mr. Dyste's own treatment notes and those of other treatment providers and evaluators, who found a mildly antalgic/ limping gait. However, this was either prior to or immediately following knee surgery [in March and November 2016] (2F/15, 27, 46). Otherwise, examination showed well-healed scars and no effusion, ecchymosis or edema. The claimant had mildly painful range of motion and tenderness, but no instability. There was no sign of infection. There were no focal motor deficits. She did not use an ambulatory aid. She had full range of motion. Sensation was intact. Peripheral pulses were normal. Homans and Moses were negative (7F/8; 8F/4, 6, 8, 28, 32). This opinion is also inconsistent with the claimant's activities, as discussed in detail above. For the foregoing reasons, I give this opinion little weight.

PageID.51-52.

Here, the Court cannot follow the ALJ's path of reasoning with respect to Mr. Dyste's opinions. *Stacey*, 451 Fed. Appx. at 519. The ALJ gave Mr. Dyste's opinions little weight because they were inconsistent with the objective medical evidence and plaintiff's daily activities. As an initial matter, it is not clear from Mr. Dyste's opinion or the ALJ's decision as to how much plaintiff's condition improved after the knee surgeries in March and December 2016, *i.e.*, did she have extreme limitations when she applied for SSI in October 2015 which improved after the

surgeries in 2016? It is possible that plaintiff had disabling impairments before the knee surgeries but not after the surgeries.

In addition, it is not clear from the record as to how some of plaintiff's listed activities were inconsistent with Mr. Dyste's limitations. Some of plaintiff's activities appear inconsistent with those limitations. For example, plaintiff is able to care for her personal needs, able to prepare simple meals, able to drive a car, and "[s]he can use health transportation, shop in stores once per month for about 20 minutes, manage personal finances, read, watch television, bake, use an IPAD, FACEBOOK and telephone." PageID.51. Notably, the ALJ observed that plaintiff sought to adopt her grandson in 2013, during a time when she was allegedly disabled. PageID.51. Plaintiff's attempt to adopt a child suggests that she had minimal limitations which allowed her to care for both a child and herself. However, other daily activities noted by the ALJ are not necessarily inconsistent with the types of limitations posited by Mr. Dyste. For example, plaintiff needs assistance to care for the needs of her pets, and sometimes needs "all day" to perform simple household chores. PageID.51.

In short, the Court cannot follow the ALJ's reasoning for giving Mr. Dyste's opinions little weight. Accordingly, this matter will be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Mr. Dyste's opinions.

> **B. The psychological conclusions of plaintiff's primary care provider are well supported by his records and evidence from other witnesses.**
>
> **C. Plaintiff's primary care provider properly considered the combined effects of physical and psychological impairments.**

Plaintiff apparently contends that Mr. Dyste's opinions include disabling mental limitations. However, Mr. Dyste did not complete a mental residual functional capacity (RFC)

8

assessment. Dyste completed a physical capacities assessment prepared for the Michigan Department of Health and Human Services on September 11, 2017, which identified "depression" as both a diagnosis and a medical condition which will affect plaintiff's ability to work. PageID.1299. However, there is no opinion from Mr. Dyste regarding plaintiff's mental condition or the extent of her depression.

The ALJ found that plaintiff has major depression, generalized anxiety disorder, and PTSD. PageID.49. In this regard, on January 14, 2016, Michael P. Hayes, Ph.D. diagnosed plaintiff with: major depression, severe, recurrent; generalized anxiety disorder; and PTSD. PageID.457. The doctor also stated that "[t]he accompanying symptoms of these conditions are clearly severe in nature." *Id.*[2] Upon reviewing plaintiff's medical records on January 22, 2016, non-examining psychologist Bruce G. Douglass, Ph.D. concluded that plaintiff "retains the capacity to perform routine, 2-step tasks on a sustained basis." PageID.124. About 1½ years later, plaintiff had one voluntary inpatient hospitalization from August 11-15, 2017 (after a suicide attempt). PageID.49. At her discharge, plaintiff's diagnoses included depression and insomnia, she was noted to be doing well on medication, and denied suicidal ideation or psychotic events. *Id.* Plaintiff had no outpatient therapy. *Id.*

The ALJ's decision gave great weight to Dr. Douglass' opinion regarding plaintiff's mental RFC stating in pertinent part:

> Although his opinion is based on the old mental listings and is vague in part, his opinion that the claimant is not disabled and can perform two step tasks is consistent with the evidence as a whole, which shows the claimant was depressed on occasion.

PageID.52. The doctor's opinion appears to be set forth in the RFC as, "[s]he can understand, remember and carry out simple instructions." PageID.45.

---

[2] The Court notes that a notation under Dr. Hayes' signature line listing his qualifications appears to state that his license expired on August 31, 2015, about four months before his examination of plaintiff. PageID.458.

9

While the ALJ accepted Dr. Douglass' opinions regarding the RFC, he did not accept all of the doctor's opinions stating:

> However, more recent evidence received at the hearing level, including the testimony of the claimant and her friend, supports the additional limitations assessed. For the foregoing reasons, I give little weight to the remainder of the opinion.

PageID.52. The additional limitations set forth in the RFC appear to include:

> [Plaintiff] can tolerate occasional changes in a routine work setting. She can never deal with the general public. She can occasionally deal with supervisors and co-workers. She will be 10% off task throughout the workday.

PageID.44-45.

Upon reviewing the ALJ's decision, it is not clear to the Court as to how the ALJ developed plaintiff's non-exertional limitations which arose from her mental impairments. The administrative hearing took place on November 2, 2017, about three months after plaintiff's psychiatric hospitalization. It is unclear from the record as to how the "more recent evidence" changed plaintiff's RFC. In short, the Court cannot trace the ALJ's reasoning as to which portions of Dr. Douglass' January 2016 opinion were given great weight, which portions of the opinion were given little weight, and which developments in plaintiff's condition led to the additional non-exertional limitations in the RFC. Accordingly, on remand, the Commissioner should re-evaluate plaintiff's mental impairments and how those impairments affect her RFC.

    **D.    The ALJ failed to give proper weight to the testimony of an objective third-party witness.**

Finally, plaintiff contends that the ALJ failed to give proper weight to the testimony of Donna Gundle-Krieg, a real estate agent engaged to sell plaintiff's house,[3] who described herself as plaintiff's friend, and is referenced in plaintiff's brief as a "concerned citizen" who stepped

---

[3] The Court notes that Ms. Gundle-Krieg's previous occupation was as a human resource administrator at the University of Michigan Health System in Ann Arbor, Michigan. PageID.94.

forward to provide assistance to plaintiff. The ALJ may use evidence of "other" sources to show the severity of a claimant's impairments and how those impairments affect the claimant's ability to work. 20 C.F.R. § 416.913(d). These "other" sources include non-medical sources such as spouses, parents and other care givers, siblings, other relatives, friends, neighbors and clergy. 20 C.F.R. § 416.913(d)(4). An ALJ must give perceptible weight to lay testimony when "it is fully supported by the reports of the treating physicians." *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983). *See Simons v. Barnhart*, 114 Fed. Appx. 727, 733 (6th Cir. 2004) ("[t]he testimony of lay witnesses, however, is entitled to perceptible weight *only* if it is fully supported by the reports of the treating physicians") (citing *Lashley*) (emphasis added). As the party attacking the agency's determination, plaintiff has the burden of establishing that the error was harmful. *See Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

Plaintiff contends that Ms. Gundle-Krieg's testimony is consistent with plaintiff's longitudinal medical record. Plaintiff's Brief (ECF No. 13, PageID.1344). Ms. Gundle-Krieg's testimony included such observations as: she found a suicide note when plaintiff was not home addressing guilt about her children and grandchildren being abused (PageID.97); found that a group of 10 people had moved into plaintiff's house without paying rent and that plaintiff would sit in her room and cry because the people were occupying her house (PageID.102); that Ms. Gundle-Krieg helped plaintiff call Adult Protective Services to get the people out (PageID.102-103); and, that plaintiff panics because she imagines that her ex-husband is looking in the window (PageID.103-104).

Here, the ALJ addressed Ms. Gundle-Krieg's testimony as follows:

> Donna Grundle-Kreig testified that she met the claimant 1-1/2 years ago when the claimant sought to list her house for sale, and that they became friends in the process. Ms. Grundle-Kreig stated that she takes the claimant grocery shopping and out to eat once per week, and helps the claimant with bills. She further testified

11

that the claimant has no ability to cope with things and sits in a dark room when she is stressed, threatens suicide, has problems remembering and following through with things and required assistance removing friends from her house. . . .

    In November 2015 the claimant's friend Marie Hittle, completed a third party function report on the claimant's behalf (5E). Ms. Hittle reported that the claimant's impairments affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, stair climb, memory, completion of tasks, concentration, and getting along with others (5E/1,6). I have considered the testimony and reports of the claimant's friends Donna Grundle-Kreig and Marie Hittle in accordance with the guidance provided by 416.927(f), and give them little weight, excepted as regards the claimant's lack of problems with use of her hands, as the extreme level of functioning as described is not supported by the weight of the evidence of record, including physical and mental status examination findings and the claimant's activities, as discussed in detail above.

PageID.53.

Ms. Gundle-Krieg's testimony essentially relates to plaintiff's mental condition. As discussed, this matter is being remanded for a re-evaluation of plaintiff's mental impairments. Only after that occurs can the ALJ determine whether Ms. Gundle-Krieg's testimony should be given perceptible weight. Accordingly, on remand, the ALJ should also re-evaluate Ms. Gundle-Krieg's testimony.

### IV.    CONCLUSION

Accordingly, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate Mr. Dyste's opinions, to re-evaluate plaintiff's mental impairments and how those impairments affect her RFC, and to re-evaluate Ms. Gundle-Krieg's testimony. A judgment consistent with this opinion will be issued forthwith.


Dated: September 30, 2019                /s/ Ray Kent
                                                  United States Magistrate Judge